UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB BEJARANO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JEFF LYNCH, *et al.*,<br><br>　　　　Defendants. | Case No. 2:23-cv-1620-WBS-JDP (P)<br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Plaintiff, a state prisoner proceeding pro se, brings his second amended complaint against fourteen named defendants—correctional officers at plaintiff's current and former correctional institutions—in their individual and official capacities, alleging that they retaliated against him in violation of the First Amendment and violated his Fourteenth Amendment due process rights during a disciplinary hearing. ECF No. 25. He further moves for a preliminary injunction, *id.* at 5, and appointment of counsel, ECF No. 26. Plaintiff's second amended complaint fails to state a claim, and I recommend that it be dismissed without leave to amend. I also recommend that plaintiff's request for a preliminary injunction be denied. I will deny plaintiff's motion for appointment of counsel without prejudice.

1

**Second Amended Complaint**

## I.  Screening and Pleading Requirements

A federal court must screen the complaint of any claimant seeking permission to proceed *in forma pauperis*.  *See* 28 U.S.C. § 1915(e).  The court must identify any cognizable claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *Id.*

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard does not require detailed allegations, but legal conclusions do not suffice.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim.  *Id.* at 679.  The complaint need not identify "a precise legal theory."  *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016).  Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief."  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court must construe a pro se litigant's complaint liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  The court may dismiss a pro se litigant's complaint "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017).  However, "'a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'"  *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

## II.  Allegations

Plaintiff names fourteen individuals as defendants: Robert Hart, Paul Bettencourt, R. Valine, F. Boe, K. Steele, David Bauchman, D. Gonzalez—correctional officers at California State Prison-Sacramento; J. Lanier, a correctional officer at Sierra Conservation Center; C.

Castillo, L. Cerrillo, P. Martinusen, D. Roth, S. Marsh, and Jeff Lynch—correctional officers at California State Prison-Corcoran. ECF No. 25 at 2, 6-7. He brings his claims against defendants in their individual and official capacities and requests monetary, injunctive, and declaratory relief. *Id.* He also seeks a preliminary injunction. *Id.* at 5.

Plaintiff alleges that on August 30, 2018, Hart wrote plaintiff up with a rule violation report ("RVR") for possession of a controlled substance. *Id.* at 8. He alleges that Hart falsified the RVR to state that plaintiff had swallowed two bundles of heroin. *Id.* Then, Bettencourt added false information into the RVR to support Hart's charge, stating that he performed a drug test on one of the bundles. *Id.* Steele then reviewed the RVR and approved it. *Id.* at 8-9. Boe later added a supplemental report to add a conspiracy charge to plaintiff's RVR, which plaintiff alleges was also based on false information. *Id.* at 9. On September 3, 2018, Boe reviewed the RVR and approved it, although, according to plaintiff, important documents were missing. *Id.*

On September 10, 2018, plaintiff alleges that Bettencourt performed a second drug test on the bundles and confirmed the presence of heroin. *Id.* Plaintiff alleges that the test results were fabricated because no record of the test was placed in his file. *Id.* Plaintiff then alleges that Lanier falsely supported Bettencourt's drug screen by stating that he was a witness. *Id.* at 9-10. The next day, Boe signed off on Bettencourt and Lanier's allegedly false RVR. *Id.* at 10. Then Baughman reviewed and signed the RVR. *Id.*

Years later, on April 27, 2022, Valine wrote plaintiff up with another RVR for distributing a controlled substance, but this time used a "higher charge." *Id.* Plaintiff alleges that Valine used the same fabricated evidence from the 2018 RVR to support the April 2022 RVR. *Id.* Plaintiff asserts that Valine stated that he wrote plaintiff up based on the Sacramento County District Attorney's forensic analysis of the two heroin bundles. *Id.* Gonzales and Boxall reviewed and approved the April 2022 RVR. *Id.* at 11.

Plaintiff alleges that he was written up a third time on May 24, 2022, by Castillo, with the same charges as appeared in the April 2022 RVR. *Id.* Cerrillo wrote him up a fourth time on October 19, 2022, again with the same information as appeared in the April 2022 RVR. *Id.* In the October 2022 RVR, Cerrillo noted that the Sacramento District Attorney's Office had chosen

3

1   to refer the case for adjudication. *Id.* Roth reviewed the notice of adjudication and failed to
2   correct the allegedly false information. *Id.* at 12.

3         On November 1, 2022, Martinusen conducted a disciplinary hearing relating to plaintiff's
4   2018 and April 2022 RVR charges. *Id.* Martinusen found plaintiff guilty and allegedly told him
5   that the adjudication was based on the 2018 RVR and the April 2022 RVR. *Id.* Plaintiff alleges
6   that this decision was based on false evidence. *Id.* Marsh and Lynch reviewed and approved the
7   disciplinary hearing results, allegedly knowing that it was based on false evidence. *Id.* at 12-13.
8   Plaintiff alleges that, at each step in this process, officers knowingly provided false information in
9   the RVRs. *Id.* at 8-13. He also alleges that the officers who reviewed and approved the RVRs
10  did so knowing that the information provided was false and fabricated. *Id.*

11        Based on these allegations, plaintiff brings a First Amendment retaliation claim and a
12  Fourteenth Amendment due process claim against all defendants. *Id.* at 14-16. As for the First
13  Amendment claim, plaintiff alleges that all defendants violated his First Amendment right against
14  retaliation after he chose to represent himself pro se in the Sacramento Superior Court on October
15  12, 2021. *Id.* at 14. He contends that his choice in representing himself prompted officers to
16  write him up on higher charges. *Id.* He also contends that there is a causal connection between
17  him representing himself and facing a more serious charge, and that he suffered an adverse action
18  in being charged with the higher offense. *Id.* He contends that retaliatory intent can be inferred
19  from the timeline of events. *Id.* at 15.

20        Plaintiff next alleges that defendants violated his due process rights when they continued
21  to falsify disciplinary reports against him, and that this has caused him to lose contact visitations
22  since 2018. *Id.* He contends that he was not given a fair and impartial disciplinary hearing, and
23  that his loss of contact visitations is an atypical hardship. *Id.* at 15-16.

24      **III.**     **Analysis**
25          **A.**     **Rule 18**

26        As an initial matter, plaintiff's complaint contains several unrelated claims in violation of
27  the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 18(a); *George v. Smith*, 507 F.3d 605,
28  607 (7th Cir. 2007) ("Thus multiple claims against a single party are fine, but Claim A against

1  Defendant 1 should not be joined with unrelated Claim B against Defendant 2."). Plaintiff brings
2  two claims against fourteen officials at three different correctional institutions. *See* ECF No. 25
3  at 2, 5-7. Plaintiff lumps his First Amendment retaliation claims against each defendant into one
4  claim, and he does the same for his Fourteenth Amendment claim. *See id.* at 14-16. Plaintiff's
5  single First Amendment retaliation claim relates to at least three different instances of alleged
6  retaliation, and no allegation demonstrates how these claims are connected to each another. *See*
7  *id.* While this issue alone might justify dismissing plaintiff's complaint with leave to amend,
8  further analysis has convinced me that dismissal without leave to amend is appropriate. *See*
9  *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam) ("Dismissal of a pro
10 se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of
11 the complaint could not be cured by amendment.") (internal quotation marks and citations
12 omitted).

### B. Official Capacity Claims

The Eleventh Amendment bars claims for damages against state officers sued in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988). However, the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), provides for a narrow exception for prospective injunctive or declaratory relief against state officers in their official capacities for alleged violations of federal law. *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012); *see also Weinapple v. Bonta*, No. 24-cv-1769-DAD-JDP, 2024 WL 5118224, at *2 (E.D. Cal. Dec. 16, 2024) (applying the *Ex Parte Young* doctrine to a claim for declaratory relief).

Under *Ex Parte Young*, "the state official sued 'must have some connection with the enforcement of the act' to avoid making that official a mere representative of the state." *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999) (per curiam) (quoting *Ex Parte Young*, 209 U.S. at 157). This connection "must be fairly direct; a generalized duty to enforce state law or a general supervisory power over those persons responsible for enforcing the challenged provision will not subject an official to suit." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d

1  697, 704 (9th Cir. 1992). Additionally, the relief sought needs to be directly stated, as "[p]receise
2  resolution, not general admonition, is the function of declaratory relief." *United States v.*
3  *Washington*, 759 F.2d 1353, 1357 (1985).

4  As to all non-warden defendants—that is, all defendants except Bauchman, Marsh, and
5  Lynch—plaintiff's official-capacity claims fail. While plaintiff purports to bring these official
6  capacity claims for injunctive and declaratory relief, he does not specify what exactly he is
7  requesting. *See* ECF No. 1 at 5, 16; *Washington*, 759 F.2d 1353, 1357 (discussing the
8  significance of "concrete facts which underlie a dispute in a particular case"). There is not even
9  an indication whether plaintiff seeks retrospective or prospective relief—a key distinction. *See*
10 *Green v. Mansour*, 474 U.S. 64, 74 (1985); *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96
11 F.3d 420, 423-24 (9th Cir. 1996) (affirming dismissal of claims for civil penalties and declaratory
12 relief based on past conduct). Finally, plaintiff makes no allegations demonstrating how these
13 non-warden defendants are officially connected to the actions of which he complains, as these
14 non-warden defendants merely have duty to enforce state law or a general supervisory power over
15 those persons responsible for enforcing the challenged provision, meaning they are not subject to
16 suit. *See L.A. Cnty. Bar Ass'n*, 979 F.2d at 704. As such, plaintiff's claims against the non-
17 warden defendants in their official capacities fail to state a claim.

18 As for the remaining defendants—wardens at their respective correctional facilities—
19 plaintiff's official-capacity claims also fail. An official capacity claim against a government
20 employee is, for all intents and purposes, a claim against the employing government entity. *Larez*
21 *v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991). A government entity cannot be held liable
22 under § 1983 for the acts of its employees solely on a *respondeat superior* theory. *Monell v. Dept*
23 *of Soc. Servs.*, 436 U.S. 658, 691 (1978). Vicarious liability attaches to a municipality only when
24 the municipality itself causes the constitutional violation at issue, which occurs only when the
25 harm results from the municipality's policy or custom. *See id.* at 694 ("[I]t is when execution of a
26 government's policy or custom, whether made by its lawmakers or by those whose edicts or acts
27 may fairly be said to represent official policy, inflicts the injury that the government as an entity
28 is responsible under § 1983."). To satisfy *Monell*'s requirements, a plaintiff must identify a

1  policy or custom, connect the policy or custom to the city itself, and show that an injury was
2  incurred because of the execution of that policy or custom. *See Long v. Cnty. of Los Angeles*, 442
3  F.3d 1178, 1186 (9th Cir. 2006). Plaintiff makes no allegations showing there is a relevant
4  municipal policy or custom here. *See generally* ECF No. 25. As such, plaintiff's allegations
5  against the remaining warden defendants in their official capacities fail to state a claim.

6      **C.**    **First Amendment Retaliation**

7  For an inmate to state a First Amendment retaliation claim, he must allege that "(1) . . . a
8  state actor took some adverse action against [him] (2) because of (3) [his] protected conduct, and
9  that such action (4) chilled the . . . exercise of his First Amendment rights, and (5) the action did
10 not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-
11 68 (9th Cir. 2005). Prisoners retain their First Amendment right to file prison grievances, and the
12 constitution protects inmates from being retaliated against for exercising this right. *Id.* at 567.
13 Separately, the right to self-representation in a criminal matter, including access to the courts,
14 arises under the Sixth Amendment. *Trudeau v. Warden*, No. 13cv01691 LJO DLB, 2014 WL
15 5325339, at *3 (E.D. Cal. Oct. 17, 2024).

16 "[D]irect evidence of retaliatory intent rarely can be pleaded in a complaint." *Watison v.*
17 *Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). As such, an "allegation of a chronology of events
18 from which retaliation can be inferred is sufficient to survive dismissal." *Id.*; *see also Pratt v.*
19 *Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) ("timing can properly be considered as circumstantial
20 evidence of retaliatory intent"). Nevertheless, knowledge of the protected activity is "critical"
21 because an officer cannot act "in retaliation for—or because of—something about which he had
22 no knowledge." *Cejas v. Paramo*, No. 14-CV-1923-WQH(WVG), 2017 WL 1166288, at *6
23 (S.D. Cal. Mar. 28, 2017); *see also Wood v. Yordy*, 753 F.3d 899, 904-05 (9th Cir. 2014)
24 (affirming grant of summary judgment where there was no evidence that defendants knew about
25 plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to prior
26 lawsuit); *Pratt*, 65 F.3d at 808 (concluding that the prisoner failed to establish a retaliation claim
27 when there was no evidence that prison officials knew of the conduct giving rise to the alleged
28 retaliatory action); *Garcia v. Diaz*, No. 5:20-cv-02564-FLA (MAA), 2021 WL 4775633, at *8

1  (C.D. Cal. Aug. 24, 2021) (finding a complaint failed to state a First Amendment retaliation claim
2  where there were no allegations to suggest defendants had knowledge of plaintiff's prison
3  grievances).
4      Here, plaintiff's claim against all defendants for First Amendment retaliation fails to state
5  a claim.  First, it does not appear that plaintiff participated in protected conduct under the First
6  Amendment.  Plaintiff asserts that defendants retaliated against him because he chose to represent
7  himself in a matter before the Sacramento Superior Court—presumably related to his drug
8  charges from the RVRs.  *See* ECF No. 25 at 14.  However, the right to self-representation in a
9  criminal matter, including access to the courts, is a right under the Sixth Amendment, not the First
10 Amendment.  As such, it does not appear that plaintiff participated in conduct protected by the
11 First Amendment.  *See Phillips v. Chappel*, No. 17-00875 EJD, 2018 WL 9875249, at *3 (N.D.
12 Cal. Aug. 15, 2018) (dismissing a First Amendment claim predicated on plaintiff's exercise of his
13 Sixth Amendment right to self-representation because the First Amendment "does not" include
14 the right to self-representation, and "[p]laintiff present[ed] no case law supporting such a
15 proposition").
16     Nevertheless, plaintiff's claim fails for other reasons.  Assuming self-representation is
17 protected under the First Amendment, plaintiff alleges that he chose to defend himself in October
18 2021.  *See id.* at 14.  Thus, claims against Hart, Bettencourt, Boe, Lanier, and Baughman fail
19 because their participation in this alleged First Amendment claim occurred in 2018—almost three
20 years before plaintiff represented himself in court.  *See id.* at 8-10.  Logically, those defendants
21 could not have committed retaliatory actions against plaintiff for actions plaintiff had not yet
22 participated in, meaning their actions in writing the RVR was not "because of" plaintiff's
23 activities.  *See Rhodes*, 408 F.3d at 567-68.
24     The retaliation claims against Valine, Gonzales, Boxall, Castillo, Cerrillo, Roth,
25 Martinusen, Marsh, and Lynch similarly fail to state a claim.  Plaintiff makes no allegation that
26 any of these defendants was aware that plaintiff chose to represent himself in court.  *See generally*
27 ECF No. 25 at 10-13.  Plaintiff again fails to allege the "because of" element.  *See Rhodes*, 408
28 F.3d at 567-68.  Although plaintiff asserts that a retaliatory inference could be drawn from the

1  timeline, *see* ECF No. 25 at 15, plaintiff's allegation is conclusory and does not allow for a
2  retaliatory inference to be implied where these defendants are not alleged to have knowledge of
3  the potential First Amendment activity at issue. Thus, plaintiff fails to state a cognizable First
4  Amendment retaliation claim against any defendant.

### D. Fourteenth Amendment Due Process

The guarantee of procedural due process under the Fourteenth Amendment only applies when there is a constitutionally protected liberty or property interest at stake. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). A protected liberty interest can arise from a state law created expectation or interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "[I]t is well-settled that prisoners have no constitutional right while incarcerated to contact visits." *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002); *see also Knox v. Biter*, No. 18-cv-00761-AWI-SAB, 2018 WL 4039971, at *2 (E.D. Cal. Aug. 22, 2018) ("Prisoners also have no right to contact visitation.") (citing *Barnett v. Centoni*, 31 F.3d 813, 817 (9th Cir. 1994) (per curiam)). Instead, "an inmate's inability to visit with whom he wishes is an 'ordinary incident of prison life'" and does not impose an atypical and significant hardship. *Macedon v. Cal. Dep't of Corr.*, 67 F. App'x 407, 408 (9th Cir. 2003).

Plaintiff's due process claim hinges on one identified liberty interest—his right to contact visitations. *See* ECF No. 25 at 15-16. However, plaintiff has no liberty interest in contact visitations. *See Wilkinson*, 545 U.S. at 221; *see also Knox*, 2018 WL 4039971, at *2. Without a protected liberty interest at stake, the Fourteenth Amendment does not apply, *see Ingraham*, 430 U.S. at 672, and plaintiff's allegations cannot state a cognizable due process claim.

### E. Dismissal Without Leave to Amend

When I screened plaintiff's first amended complaint, I informed plaintiff that a second amended complaint would provide his "final opportunity to amend and better explain his claims" before I recommended dismissing this action. Plaintiff has had this final opportunity, but he has not sufficiently stated any claim against any defendant, and I do not believe further amendment will cure any of the deficiencies outlined above. *See Schucker*, 846 F.2d at 1203-04. As such, I recommend that plaintiff's second amended complaint be dismissed without leave to amend.

9

**Request for a Preliminary Injunction**

Plaintiff also moves for a preliminary injunction. ECF No. 25 at 5. To obtain injunctive relief, plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The first factor under *Winter* is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Here, plaintiff cannot demonstrate a likelihood of success on the merits, since the complaint fails to state a claim. As such, his request for a preliminary injunction should be denied.

**Motion for Appointment of Counsel**

Plaintiff also moves for appointment of counsel. ECF No. 26. In light of the above recommendations, I will deny plaintiff's motion for appointment of an attorney without prejudice. If these recommendations are not adopted, the issue may be revisited.

Accordingly, it is hereby ORDERED that plaintiff's motion for appointment of counsel, ECF No. 26, is DENIED without prejudice.

Further, it is RECOMMENDED that:

1. Plaintiff's second amended complaint, ECF No. 25, be DISMISSED without leave to amend and the Clerk of Court be directed to close this action.

2. Plaintiff's request for a preliminary injunction, ECF No. 25 at 5, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   May 14, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE